STATE ex SCHMITT v DAVIS, etc et

Ohio Appeals, 8th Dist, Cuyahoga Co

No 14276. Decided Jan 7, 1935

Ray T. Miller, Cleveland, and Wm. C. Dixon, Cleveland, for relator.
Ezra Shapiro, Director of Law, Cleveland, for respondents.

222

**OPINION**

By LIEGHLEY, J.

It is useless to deny the assertion that this controversy savors of politics. The facts and circumstances are seemingly conclusive. The basic facts were established in November, 1933. It was then that this appointment was undertaken by the outgoing Miller administration. It was then that the injunction suit was filed to thwart and nullify this appointment. It is said that the outgoing administration then undertook to place or promote a group of individuals. The injunction suit had for its object the prevention of these appointments. In this case we are only concerned with the appointment of the relator. The facts attending the appointment of others were not disclosed and are not before us.

In this controversy it is doubtful whether the future public welfare or the future efficiency of the respective departments of service was the exclusive dominant factor that motivated the precipitous action of either. However, these political considerations simply supply the motives therefor and with the motives we are not concerned.

These remarks are not made in a spirit of criticism. This is a government of parties, and so long as it continues as such, the game of politics will be played. Each side will bend every effort upon every occasion that the opportunity appears to arise, to obtain positions of advantage. In a decision of this law-suit, however, we are concerned only with the two outstanding questions:

First: Was the relator properly and legally appointed?

Second: To what extent, if at all, did the action in injunction in the Common Pleas Court affect his status?

From the pleadings, the briefs, the arguments of counsel and the record, certain facts are conceded. There are other facts that are established by the greater weight of the evidence.

About October 7, 1933, a vacancy occurred in the office of Battalion Chief in the Division of Fire. The relator was then appointed Acting Battalion Chief and continued to serve in that capacity until after the Davis administration was inducted into office. Several days after the municipal election in November, 1933, at which election Mayor Miller failed of re-election, the Miller administration conceived the idea of promoting relator to the office of Battalion Chief. His qualifications and eligibility do not seem to be seriously disputed. On November 9, 1933, the relator was called before Safety Director Adams and appointed Battalion Chief. The oath was thereupon administered and relator armed with a letter to Fire Chief Granger directing him to assign relator to the duties of said office. This letter was presented to and accepted by Chief Granger on November 9, 1933, and relator was told to return the next morning for assignment. Upon his return the following morning the relator was informed by the chief that he had been served with injunctive process and no action would be taken by him under the circumstances.

It is claimed by respondents that the relator was not appointed from a proper certified list of the Civil Service Commission. The proof discloses that request was made of the secretary of the Civil Service Commission on the afternoon of November 9, 1933, for a certified eligible list for appointment of a Battalion Chief and that this request was wrongfully refused. The proof is that a second similar request was made on the same day and refused, although the secretary claims no memory of such occurrence, but does not positively deny it. The appointment was thereupon made from a

certified eligible list then in the office of the Safety Director, which list had not theretofore been exhausted. It is not asserted that if the secretary had complied with the request, the new list would fail to show that relator was eligible. On the contrary, it would carry his name among the first three available for appointment.

On the afternoon of November 9, 1933, one Daisy V. Falsgraf, a taxpayer, made demand upon the Director of Law to institute a taxpayer's suit to prevent the proposed appointment of relator and others, which demand was refused. An action was thereupon instituted by the filing of a petition on that day having for its object the above expressed purpose.

On the morning of November 10, 1933, an amended petition was filed upon which service was had upon Chief Granger and the other defendants named in said amended petition. The relator was not made a party to that law-suit, and so far as this record discloses was not advised thereof until he talked with Chief Granger on the morning of November 10th. This injunction suit went to decree. The body of the decree alleged November 10, 1933, as the date of the hearing, although the decree bears the filing date of November 14, 1933, which is the day the Davis administration was inducted into office. The decree is approved by the Law Director of the incoming administration and the surrounding circumstances indicate that the same was and is a consent decree. However that may be, did this decree, bearing date of November 10, 1933, and filed as of November 14, 1933, effectually nullify the appointment of relator to said office even if his appointment thereto was legally made?

First, was relator properly and legally appointed?

It is vehemently asserted by the respondents that the Safety Director is not the duly constituted appointing officer and for that reason relator never became entitled to said promotion and never was promoted. It is claimed that this authority rests in the Fire Chief. Certain sections of the Charter are copied into the answer of respondents. Certain sections are referred to in the briefs and were referred to in oral argument. An examination of pertinent sections is necessary to ascertain in whom such authority resides.

Section 68 declares that the Mayor shall be the Chief Executive officer of the city.

By §71, it is made the positive duty of the Mayor to act as chief conservator of the peace within the city.

Section 77 enumerates the departments of the city government. The department of public safety is not included. However, this section authorizes the creation of other departments by ordinance with the concurrence of the board of control. The department of public safety was thus created.

Section 78 requires that a director for each department shall be appointed by the Mayor and shall serve until removed by the Mayor. The director shall have supervision and control of his department.

Section 79 provides that the work of each department shall be distributed among such divisions thereof as are established. There shall be a commission or chief in charge of each division, who shall be appointed and may be removed by the director in conformity with then existing civil service rules. Each commissioner shall, with the approval of the director, appoint all officers and employees in his division and have control of its affairs.

It is to be noted that it is provided that a commissioner or chief shall be in charge of each division, but when the appointive authority is mentioned and considered, the chief is omitted.

By §115, the director is executive head of police and fire.

By §116, the Mayor shall appoint additional patrolmen and officers in case of emergency. The chief of police is given exclusive control of the stationing and transfer of men under rules established by the Mayor or the director to whom the chief is directly responsible.

By §118, the Mayor may appoint men to the fire force in emergency. The chief of fire stations and transfers men with limitations, the same as are imposed on the chief of police.

By §119, either chief may only suspend and refer the charges to the director.

By §122, the director or the Mayor shall classify the police and fire service of the city, and make regulatory and disciplinary rules therefor not inconsistent with express provision of the charter.

By §133 such promotions shall be made from lists prepared from competitive tests as the mayor or director of a department shall request.

From these sections of the charter and other less pertinent sections, certain facts are indisputably established.

The Mayor is the chief executive of the city. He is responsible for the successful administration of its affairs. The public holds him responsible therefor. He is clothed with authority to hire and discharge any officer and employee subject to the limitation of civil service. All directors

are his appointees and subject to removal at his will. Appointees of directors are subject to his approval. Appointees of commissioners of divisions are made upon and subject to the approval of the directors of the respective departments. The clear intendment of the provisions of the charter is manifest that the ultimate decision and responsibility is reposed in the mayor in respect to all executive authority and its exercise. With the Mayor as chief executive, the directors his creatures and removable at his will, the commissioners their subordinates and responsible to his creatures, it is idle talk to say that some subordinate must speak up first to constitute an appointment legal. Such claim is not consistent with the apparent official structure sought to be set up by the charter.

Specifically directing our attention to the department of safety some express provisions and omissions in respect to authority are significant. It is not permitted to write into the charter what is not there, especially when the expressed provisions are clear and unambiguous. The mayor is chief conservator of the peace.

The title of chief is given to the heads of fire and police alone. No appointive authority is expressly given to either although such power is given to commissioners by §79. Any claim that these titles are synonymous is untenable. The one is consistent with the outstanding responsibility of chief conservator of the peace, the other with the detail and orderly workings of a mere administrative department. If these deductions be disputed, the answer is obvious that it would have been easy to have given to the chief by express provision the right to appoint instead of conspicuously omitting to do so. A chief conservator of the peace would cease to be such with the appointive authority resting primarily in a subordinate.

It is our conclusion that relator was legally appointed Battalion Chief on November 9, 1933, and entitled to said office and its emoluments from said date, unless the decree of Nov. 14, 1933, operates to bar him from asserting his claim.

Coming now to the second proposition: Is the decree of November 14, 1933, res adjudicata? Without repeating all the facts hereinbefore recited, it is important to remember that the relator was appointed by Safety Director Adams and qualified on November 9, 1933. The appointing authority rested in him, with the approval of the Mayor. The relator was then armed with a letter directing the Fire Chief to assign him. Nothing remained to be done to constitute relator a Battalion Chief, and all necessary steps were taken on November 9, 1933. On this day relator held the office of Battalion Chief.

On November 10, 1933, Fire Chief Granger was served with injunctive process, and it is urged and asserted that this decree subsequently entered, effectually operated to nullify this appointment and take from relator rights that had been legally conferred upon him theretofore. With this contention we are unable to agree.

Many authorities are cited by the City of Cleveland establishing the principle that a decree of a court having jurisdiction of the parties and subject matter and being without fraud or collusion, is binding upon all parties to said action and their privies. This rule is undeniably fixed and established. To have any bearing on this situation it must be assumed to be a fact that relator is bound and his rights determined by a decree in a case in which Safety Director Adams and Chief Granger were made parties with service upon them subsequent to the appointment.

The relator, under the circumstances, was not privy to any named defendant. He acquired certain rights on November 9, 1933, of which he could not be deprived by an action subsequently instituted against the authority theretofore appointing him to office. His status became fixed on November 9, 1933, which could not be affected in an action in which he was not made a party. He was and is entitled to his day in court.

Further, this decree would be entitled to more potent effect if it did not bear the earmarks of a consent decree. The defense of res adjudicata might successfully be asserted if the decree was the result of an adversary proceeding to which proceeding the relator was a party. An adversary proceeding is usually the basis of res adjudicata. **Koelsch v Mixer, Admr., 52 Oh St 207, 211.**

Finally, it is our conclusion that relator was legally appointed Battalion Chief on November 9, 1933, and legally inducted into said office; that the decree subsequently entered in the Common Pleas Court on November 14, 1933, for the foregoing reasons does not operate to bar relator from asserting his rights and title to said office from said date. The writ is therefore allowed as prayed for, with exceptions noted.

HYNES, PJ, and LEVINE, J, concur in judgment.